UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KARI HELSTERN,<br><br>　　　　　　　　Plaintiff,<br><br>vs.<br><br>CITY OF SAN DIEGO; SAN DIEGO POLICE DEPARTMENT; COUNTY OF SAN DIEGO; San Diego County SHERIFF'S DEPARTMENT; San Diego Police Chief WILLIAM LANSDOWNE (#5969); San Diego Police Assistant Chief BOYD LONG (#3691); and City and County DOES 1–50, inclusive,<br><br>　　　　　　　　Defendants. | CASE NO. 13-CV-0321-LAB (RBB)<br><br>**ORDER RE: MOTIONS TO DISMISS** |

　　　　This civil rights case arises out of two separate encounters between Helstern and law enforcement during the somewhat recent "Occupy San Diego" protests, in which Helstern was participating. She asserts thirteen claims against each of the Defendants. The first five are torts under California law: (1) false arrest and imprisonment; (2) assault and battery; (3) intentional infliction of emotional distress; (4) trespass to chattels and conversion; and (5) negligence. The next seven are § 1983 claims for (6) interference with free speech and

assembly[1]; (7) illegal seizure of property; (8) unlawful seizure and arrest; (9) excessive force; (10) unconscionable conditions of confinement; (11) excessive force; and (12) municipal liability under *Monell v. Department of Social Services*, 436 U.S. 658 (1978).[2] Helstern's final claim alleges a violation of her civil rights under California law pursuant to California's Bane Act, Cal. Civ. Code § 52.1.

Now pending before the Court are the City and County's motions to dismiss. The City's motion is very brief; it argues for the dismissal of Helstern's fifth claim because there's no government liability for common law negligence. The County's motion to dismiss is more comprehensive; it takes on all of Helstern's claims. The Court will discuss the motions separately below.

**I.     Factual Allegations**

Helstern's first encounter with law enforcement occurred in the early morning of October 28, 2011, when police officers raided an "Occupy" protester camp at the San Diego Children's Park where she was staying. Helstern alleges that upon seeing officers in riot gear, she walked over to her scooter where she was unexpectedly tackled by one. She further alleges that the officer twisted her arm and placed her in plastic handcuffs, causing her pain, swelling, and numbness in spite of repeated complaints. Meanwhile, Helstern was detained with other protesters in the back of a van for four hours. Despite requests, Helstern and the other protesters were denied water, medical attention, and bathroom breaks. Some protesters eventually relieved themselves in the van, in close proximity to Helstern. She was

---

[1] This claim is actually a good number of different claims bundled, haphazardly, into one. Helstern first alleges interference with free speech, freedom of assembly, and freedom to petition the government. She then alleges abuse of process and a violation of due process. She seeks relief under the California Constitution, Cal. Civ. Code § 1708, and § 1983. Like the claims that follow, the Court will treat this as a straightforward § 1983 claim based upon a violation of Helstern's First Amendment rights.

[2] Helstern's *Monell* claim, like her sixth claim, is also haphazardly pled. She asserts it against the City and County of San Diego, which is fine, but also against Lansdowne and Long, who as individuals would be liable under a straightforward § 1983 theory rather than under *Monell*. To be sure, their actions might give rise to municipal liability under *Monell*, but they wouldn't themselves be the defendants to a *Monell* claim. The Court will therefore construe Helstern's twelfth claim as a *Monell* claim only against the City and County of San Diego.

then processed by the Sheriff's Department at the Las Colinas Detention Facility and placed in a holding cell for five hours, where she received minimal medical attention, before being released with a citation. She alleges that her scooter was seized, and the keys were never returned. Helstern's hands had to be treated and took three weeks to heal.

The second incident took place on December 12, 2011, as "Occupy" protesters gathered at the entrance to the Port of San Diego. Helstern was standing in front of a truck that was cued to enter the Port when she alleges an officer ran towards her, and she ran away but tripped on a median. She further alleges that the officer pinned her down and "threatened to hurt her if she did not reach her hands behind her." (Comp. ¶ 37.) Helstern contends that she complied, and was eventually booked at Las Colinas Detention Facility and later released.

## II.     Legal Standard

Federal Rule of Civil Procedure 12(b)(6) allows a party to move to dismiss a complaint for failure to state a claim upon which relief may be granted. In considering a motion to dismiss, the Court must accept the factual allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff. *United Transp. Union v. BNSF Ry. Co.*, 710 F.3d 915, 930 (9th Cir. 2013). Assertions that are mere "legal conclusions," however, are not entitled to the assumption of truth. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). To survive a motion to dismiss, a plaintiff needs to plead sufficient facts to state a claim for relief that is plausible on its face. *Id.*

Upon granting a motion to dismiss for failure to state a claim, the Court has discretion to allow leave to amend the complaint pursuant to Federal Rule of Civil Procedure 15(a). Dismissal with prejudice and without leave to amend is not appropriate unless it is clear that the complaint could not be saved by amendment. *Harris v. Cnty. of Orange*, 682 F.3d 1126, 1131 (9th Cir. 2013).

## III.    City's Motion to Dismiss

The City moves to dismiss Helstern's negligence claim only.  Its argument is simple: Governmental tort liability in California must be authorized by statute, and Helstern doesn't

identify such a statute for negligence. The City is right. "[I]n California, all government tort liability is dependant upon the existence of an authorizing statute or 'enactment', and to state a cause of action every fact essential to the existence of a statutory liability must be pleaded with particularity, including the existence of a statutory duty." *Searcy v. Hemet Unified Sch. Dist.*, 177 Cal.App.3d 792, 802 (Cal. Ct. App. 1986). *See also de Villers v. County of San Diego*, 156 Cal.App.4th 238, 255–56 (Cal. Ct. App. 2007) ("We conclude that a direct claim against a governmental entity asserting negligent hiring and supervision, when not grounded in the breach of a statutorily imposed duty owed by the entity to the injured party, may not be maintained."); *Cowing v. City of Torrance*, 60 Cal.App.3d 757, 761 (Cal. Ct. App. 1976) ("There is no common law governmental tort liability in California; and except as otherwise provided by statute, there is no liability on the part of a public entity for any act or omission of itself, a public employee, or any other person.").

In her opposition brief, Helstern identifies the statutes her complaint is missing: California Civil Code § 1714, which recognizes that "[e]veryone is responsible . . . for an injury occasioned to another by his or her want of ordinary care or skill in the management of his or her property or person," and Cal. Gov't Code § 815.2(a), which holds public entities liable for acts or omissions of an employee "within the scope of his employment if the act or omission would . . . have given rise to a cause of action against that employee or his personal representative."[3]

The City is right to argue in response that these statutes belong in Helstern's complaint, where the negligence claim is actually asserted. The City's motion to dismiss is therefore **GRANTED**, and Helstern's negligence claim is **DISMISSED WITHOUT PREJUDICE AND WITH LEAVE TO AMEND.** She may file a First Amended Complaint that

---

[3] The City doesn't raise this point, but it seems to the Court that there must be one more piece to the statutory puzzle here. Section 1714 establishes a statutory duty of care, and § 815.2(a) holds public entities liable for their employees' wrongdoing. But presumably—and the Court may be mistaken here—there must be some additional statute subjecting public employees to liability under § 1714 in the first place. Perhaps that statute is Cal. Gov't Code § 820, which says "a public employee is liable for injury caused by his act or omission to the same extent as a private person." *See Zelig v. County of Los Angeles*, 27 Cal.4th 1112, 1127 (2002).

pieces together the statutory puzzle giving rise to a negligence claim against the City, so that the City may know the precise nature of the claim it is defending against.

**IV.     County's Motion to Dismiss**

The County takes on all of Helstern's claims against it. The Court will address them in sequence.

    **A.     Common Law Torts**

The Court has just identified the problem with Helstern's negligence claim, at least as pled, and her other tort claims—false arrest and imprisonment, assault and battery, intentional infliction of emotional distress, and trespass and conversion—suffer from the same affliction. The County's motion to dismiss these claims is therefore **GRANTED**, and the claims are **DISMISSED WITHOUT PREJUDICE AND WITH LEAVE TO AMEND**.[4]

    **B.     Section 1983 Claims**

The County moves to dismiss each of Helstern's § 1983 claims because a municipality can't be held liable under the statute. This is obviously true as a general rule. "[A] municipality cannot be held liable *solely* because it employs a tortfeasor—or, in other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory." *Monell*, 436 U.S. at 691 (1978).

The problem here, frankly, is the lack of precision in Helstern's complaint. She asserts her 1983 claims (claims six through eleven) against "All Defendants" and then separately asserts a *Monell* claim (claim twelve) against the City, County, Chief of Police Landsdowne, Assistant Chief of Police Long, and "all Supervisory DOE Defendants in their Official Capacities." This betrays either carelessness in pleading or else a lack of understanding as to how § 1983 operates. To the extent Helstern wants to assert a § 1983 claim against the County, it can only do so under *Monell*—*Monell* liability *is* § 1983 liability

---

[4] To be fair, Helstern does cite Cal. Civ. Code §§ 1708 and 3333 to accompany her trespass and conversion claim, although neither is specific to trespass or conversion. Indeed, § 1708 simply prohibits people from injuring others or infringing upon their rights, and § 3333 pertains to damages. Perhaps, general as these provisions are, Helstern intends to incorporate them into each of her tort claims. The Court leaves open for now, however, the question whether they do the work Helstern needs them to—either for her trespass and conversion claim in particular or her other tort claims more generally.

for municipalities. This means that the County really isn't a proper defendant to Helstern's sixth through eleventh claims in the first place. It also means that Chief Landsdowne, Assistant Chief Long, and "all Supervisory Doe Defendants in their Official Capacities" aren't proper defendants to Helstern's twelfth claim, because as a *Monell* claim its target isn't individuals. The actions of individuals can certainly give rise to *Monell* liability, but as individuals they're simply subject to a straightforward § 1983 claim. This is all to say that what the Court sees here are six § 1983 claims directed at individuals (claims six through eleven) and one § 1983 claim, based on essentially the same conduct, directed at the City and County under *Monell*. So, the question here is whether Helstern has adequately stated a *Monell* claim against the County.

Under *Monell*, a municipality can be liable for the violation of an individual's constitutional rights "only if a municipal policy or custom was the 'moving force' behind the constitutional violation." *Villegas v. Gilroy Garlic Festival Ass'n*, 541 F.3d 950, 957 (9th Cir. 2008). There must be "a direct causal link between a municipal policy or custom and the alleged constitutional deprivation." *City of Canton v. Harris*, 489 U.S. 378, 385 (1989). Beyond actions pursuant to an official policy or long-standing practice or custom, a municipality may also be liable for decisions or ratifications of a "final policymaker." *Ellins v. City of Sierra Madre*, 710 F.3d 1049, 1066 (9th Cir. 2013). *See also Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996) ("Third, the plaintiff may prove that an official with final policy-making authority ratified a subordinate's unconstitutional decision or action and the basis for it.") (citations and internal quotations omitted). Whether an official is a policymaker for *Monell* purposes is a question of state law. *Ellins*, 710 F.3d at 1066.

The factual allegations behind Helstern's *Monell* claim are thin. In her factual accounts of both incidents, the Court discerns a single allegation that's relevant:

> In the block of First Avenue and Island Street, DOE Defendants, including officers under the command of Defendants LANDSDOWNE and LONG, employed indiscriminate trap-and-arrest tactics to unlawfully arrest protestors at the Children's Park, including Plaintiff. (Compl. ¶ 24.)

//

This falls short for a number of reasons. First, Chief Landsdowne and Assistant Chief Long are City employees, not County employees. Second, unlawful arrests only go to a fraction of the unconstitutional conduct Helstern alleges. Third, the mere fact that arresting officers were "under the command" of Landsdowne and Long raises more questions than it answers. Technically speaking, all police officers in San Diego are under the command of the police chief and assistant police chief, just like all members of the United States military are "under the command" of the President. But did Chief Landsdowne and Assistant Chief Long order the arrests? Did they ratify them? Were they even on the scene? It's completely unclear.

It doesn't get much better when Helstern asserts her actual claims. Only four of her six 1983 claims—claims eight through eleven—allege that Landsdowne and Long ratified the police officers misconduct, and they do so in identical, conclusory, boilerplate language: "Defendants LANDSDOWNE, LONG, and other DOE supervisory Defendants, ratified the illegal conduct of the DOE Defendants." (*See* Compl. ¶¶ 79, 85, 89, 94.) This won't do because the allegations in a complaint must be *factual*. A complaint "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). (And, of course, the actions of Landsdowne and Long can't trigger *Monell* liability for the County.)

It is only where Helstern asserts her actual *Monell* claim that the allegations begin to take form, and even then they're still conclusory and too focused on City officials. She asserts that "the actions of the DOE Defendants were part of a wider pattern and practice that was approved and encouraged by the San Diego Police Department and the San Diego Sheriff's Department." (Compl. ¶ 96.) Out of nowhere, she asserts that "the Sheriff's Department[ ] had a departmental policy of harassing the individuals who constituted the 'Occupy' movement (of whom Kari was one) and of tolerating (and even encouraging) violations of these individual's civil rights." (Compl. ¶ 98.) And she asserts that "the pattern and practice of the . . . Sheriff's Department, and of the individuals with final policymaking authority within [it], was such that there was a permanent and settled culture which

//

encouraged both the harassment of, and the use of excessive force against, individuals like Plaintiff who were perceived as being a part of the 'Occupy' movement." (Compl. ¶ 99.)

The Court certainly appreciates what Helstern is trying to do here—summon some *evidence* that the County (or the Sheriff's Department) is liable for Helstern's alleged mistreatment—but she simply doesn't have any. The allegations come off as entirely speculative, and it's apparent enough to the Court that Helstern is desperate just to survive a motion to dismiss her *Monell* claim against the County so she can take discovery to see whether she plausibly has one. But the Court will not "unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Iqbal*, 556 U.S. at 678–79.

Helstern's allegations, really, are general assertions unsupported by any hard facts, and therefore have the status of "mere conclusory statements" that the Court doesn't have to accept as true for the purposes of a motion to dismiss. *Id.* at 678. The Court can accept, for now, that Helstern was falsely arrested and mistreated, but it can't accept—and it's a shot in the dark to allege—that the moving force behind her mistreatment was some County policy or the decisions of a County policymaker. Her allegations simply don't raise the right to relief about the speculative level, and the County's motion to dismiss her *Monell* claim is **GRANTED**. The claim is **DISMISSED WITHOUT PREJUDICE AND WITH LEAVE TO AMEND.**

### C.    Bane Act Claim

Helstern's last claim asserts a violation of the Bane Act, which provides a private cause of action against anyone who "interferes by threats, intimidation, or coercion, or attempts to interfere by threats, intimidation, or coercion, with the exercise or enjoyment by any individual or individuals of rights secured by the Constitution or laws of the United States, or of the rights secured by the Constitution or laws of [California] . . . ." Cal. Civ. Code § 52.1. The Bane Act is, at heart, a hate crimes statute, and a defendant is liable under it "if he or she interfered with or attempted to interfere with the plaintiff's constitutional rights by the requisite threats, intimidation, or coercion." *Shoyoye v. County of Los Angeles*, 203 Cal.App.4th 947, 956 (Cal. Ct. App. 2012.)

The County moves to dismiss Helstern's Bane Act claim for what the Court perceives are two entirely different reasons. The first is that her factual allegations focus on the conduct of the City police officers rather than the Sheriff's Department or employees of the Sheriff's Department. The second reason is that, as a matter of law, the County can't be held directly liable under the Bane Act in the first place, but that's hardly an issue for Helstern because she can simply claim the County is vicariously liable under the Bane Act. *See Darraj v. County of San Diego*, Case No. 11-CV-1657, 2013 WL 1796990 at *15 (S.D. Cal. Apr. 29, 2013). So, the real question here is whether Helstern has pled adequate facts to show that the County is liable for the rights violations she alleges.

It's true, as the County points out, that the Sheriff's Department doesn't really make an appearance in Helstern's complaint until she arrived at the Las Colinas Detention Facility *after* she was tackled, *after* she was officially placed under arrest, *after* she was placed in unnecessarily painful handcuffs, *after* she was denied access to a bathroom while waiting in a police van, and *after* almost everything that this lawsuit is based on took place. (Compl. ¶ 33.) The only clear factual allegation against the Sheriff's Department is that she received inadequate medical attention for her swollen hand once at Las Colinas—and even that allegation is directed at a nurse. It also doesn't appear to be the basis of any of Helstern's claims; in other words, there is no claim here that the Sheriff was deliberately indifferent to Helstern's medical needs, in violation of the 8th Amendment.

Helstern's response to this is to essentially re-write her complaint, and for the first time assert that in fact the Sheriff's Department and Police Department—the County and the City—acted in concert from the beginning.

> Defendant City of San Diego and Defendant County of San Diego acted as agents of one another, conspiring and collaborating to carry out a pattern and practice of chilling the constitutional rights of peaceful demonstrators and their supporters by using scare tactics. This included swat-style roundups and repressive pre-incarceration detentions, excessively-violent arrests, imprisonment for unnecessarily long periods of time and subsequent dismissal of many of the charges underlying the arrests. The County unlawfully threatened Plaintiff because she was exercising her free speech rights. The County then arrested her for the same reason. The County unlawfully detained Plaintiff, since the detention was

>incident to an unlawful arrest. County of San Diego affirmed and ratified the City's conduct by accepting custody of Kari after she was unlawfully arrested. (Opp'n Br. at 8.)

The problem is that none of this is alleged, at least not explicitly, in Helstern's complaint. If she really thinks the City and County acted as each other's agents, whatever that means, she should allege as much. Did the County really arrest her, or was it the City? And it can't possibly be the case that the County is on the hook for Helstern's allegedly wrongful arrest simply in virtue of accepting her into custody; at least, Helstern offers no authority for that proposition.

The County's motion to dismiss the Bane Act claim is **GRANTED**. The claim is **DISMISSED WITHOUT PREJUDICE AND WITH LEAVE TO AMEND**.

## V.     Conclusion

All of the claims discussed above are dismissed without prejudice and with leave to amend. This includes Helstern's negligence claim against the City, and all of her claims against the County (with the understanding that her sixth through eleventh causes of action aren't directed at the County). Helstern should pay close attention to the reasons given here for the inadequacy of her claims as pled. If she can't credibly correct those inadequacies, then she shouldn't reassert the claims. The point here is to assert the claims that make the most sense on the facts known; it is not to assert all theoretical claims on the hope that some will stick. The Court is particularly discouraged by Helstern's attempt to group the City and County together, and to assert with virtually no factual support that the Police and Sheriff's Department collaborated on the civil rights violations she alleges. There are some clear indicators—uniform and place of detail, for example—of the difference between the

//
//
//
//
//

two, and Helstern's complaint makes no attempt to differentiate them.  The Court expects better in her First Amended Complaint, which is due **2 weeks from the date this Order is entered.**

**IT IS SO ORDERED**.

DATED: July 10, 2013

*Larry A. Burns*

**HONORABLE LARRY ALAN BURNS**
United States District Judge